JACOB R. SHIPHERD

*v.*

BURGESS P. FIELD.

1. AGENT—*liability of agent loaning money, for not taking the security required.* If a party, engaged in the business of loaning money on real estate security, solicits money to loan, promising to take a first mortgage

on real estate, in value double the sum loaned, and obtains the money, which he loans, taking a mortgage on real estate, which is subject to prior incumbrances, which are unknown to the party advancing the money, and under which the property mortgaged is sold, whereby the debt is lost, such agent will be responsible to the person advancing the money, in an action on the case.

2. The fact, in such a case, that the mortgaged property was of double the value of all the incumbrances on it, will not relieve the agent of liability to his principal, who had no knowledge of any prior liens until the property was lost by sale under a prior deed of trust.

3. SAME—*whether a delay in tendering securities to agent is sufficient to preclude a recovery.*  Where an agent loans his principal's money, taking inadequate security therefor, in violation of his agreement, so that the same is lost, and he induces his principal to wait about a year, in the hope of being able to collect his money, this will dispense with an earlier offer to return the securities by the principal, to him, before bringing suit to recover for the loss sustained by him.

4. PLEADING—*surplusage.*  Where matter in a pleading is nonsense, by being contradictory and repugnant to something precedent, the precedent matter which is sense shall not be defeated by the repugnancy which follows, but that which is contradictory shall be rejected, and this more especially after verdict.

5. ARREST OF JUDGMENT.  A judgment will not be arrested for a defective allegation in a pleading, which, from the context, clearly appears to be a mere clerical error of the pleader.

APPEAL from the Circuit Court of Cook county; the Hon. LAMBERT TREE, Judge, presiding.

Mr. ISAAC G. WILSON, and Mr. T. LYLE DICKEY, for the appellant.

Messrs. COOPER, GARNETT & PACKARD, for the appellee.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

This was an action on the case, brought by Field, appellee, against Shipherd, appellant, as a real estate loan-broker in the city of Chicago.

The substantial charge contained in the declaration is, that Field placed in the hands of Shipherd, who was engaged in the business of loaning money, secured on real estate in Cook

county, the sum of $3000, to be loaned on first mortgage real estate security of twice the value of the money loaned; that Shipherd loaned the money to one Montgomery, taking his notes, secured by a trust deed to one Kelly, as trustee, upon 18 acres of land in Cook county; that said trust deed was a second lien only, and was subject to two trust deeds upon the property executed to John G. Rogers, to secure a part of the purchase money, which last mentioned trust deeds were a valid first lien; that, afterwards, Rogers, as trustee, sold the premises under the trust deeds to him, whereby Field lost the benefit of his security; that Montgomery was wholly insolvent.

The plaintiff recovered in the court below $2760, the amount actually advanced by Field, and Shipherd has appealed.

The principal ground insisted upon for the reversal of the judgment is, that the verdict was palpably contrary to the evidence, and the court erred in not granting a new trial.

The only real point of controversy upon the facts is, whether Kelly was so far the agent of Field, and participated to such an extent in the making of the loan and taking the security, as to relieve Shipherd from the responsibility of taking inadequate security.

It appeared in evidence, that Field resided in Vermont. Kelly was a farmer, residing at Wheaton, in DuPage county, in this State. At an interview had between Kelly and Shipherd, the latter proposed to Kelly that he should solicit, from his friends at the East, money for Shipherd to loan, saying there had never been a dollar lost through his office, and never should be, and explained to him particularly the mode in which he made loans; that he took only first mortgage real estate security, on property worth twice the amount loaned; that he required an abstract of the title to the property, which he had examined by competent counsel; that he himself did not pretend to examine any abstract at all, and promised Kelly that, on all moneys he would solicit for him to loan, he would give him two per cent, and that Kelly should not

be at any trouble; that he (Shipherd) would see to all the papers. Kelly, afterward, at the instance of Shipherd, went East for the purpose of procuring $20,000 of one Conant, for Shipherd to loan. He there met Field; told him he was there to get a loan for Shipherd; that the latter had solicited money to loan, and offered him two per cent for all that he could get from his friends East, and related to Field Shipherd's mode of making loans, and the kind of security he took, as Shipherd had previously detailed to Kelly. Field then partially promised to let him have $2000, to make out the $20,000 from Conant. Kelly returned to Chicago. Shipherd inquired if he had made arrangements for any more money, and Kelly told him that Field, a friend of his, had some that he would let come at a certain per cent. Afterwards, Shipherd telegraphed Kelly to come to Chicago, and told him he wanted $3000 for Montgomery, and wished him to write to Field for $3000. Montgomery, who was introduced to Kelly by Shipherd, joined in the request. Kelly wrote, and Field sent the money accordingly to Kelly, which was handed over to Shipherd by Kelly, on the delivery to him by Shipherd of Montgomery's notes and trust deed.

There was a stipulation in the case, on the part of Shipherd, that he received the money from Field, to be loaned by him for Field, on real estate security, and that he loaned the same to Montgomery, and received from the latter his notes therefor, and that Shipherd, in order to secure the payment of the notes, received of Montgomery the trust deed in question.

The weight of the evidence goes to show that, so far as concerned the facts, Kelly had equal means of knowledge with Shipherd of the kind of security that was taken, and that he accepted the trust deed from Shipherd, supposing it to be the first lien upon the property, as he immediately informed Field it was, on the transmission to him of the securities.

The claim on behalf of Shipherd is, that Kelly was the agent of Field, for all purposes of the loan, and that Kelly's knowledge of the facts, and approval and acceptance of the security, were those of Field; that Shipherd's part in the transaction was really no more than that of bringing the parties together, by the introduction of Montgomery to Kelly; that, from that time, Shipherd's responsibility ceased, and that the security was in fact arranged and taken by Field himself, through his agent, Kelly.

Kelly was the agent of Field in some particulars, as, in receiving the money and paying it over to Shipherd, and receiving from him the papers; but we think the jury were justified in finding that Kelly was not the agent of Field for the examination of the title and the taking of the required security. For that purpose, Field relied upon Shipherd, as he expressly testifies. He had the right to expect that Shipherd would take a first mortgage security—one that would be pronounced such by competent counsel, as he had held out that he would do, according to Kelly's testimony. Kelly, unversed as he was in such affairs, might well have supposed that Field's trust deed was the first lien, because it was first recorded; but no legal opinion to that effect had been obtained by Shipherd. He had merely obtained an abstract of title, with the opinion of a competent attorney that the title was good in Montgomery, subject to the incumbrances thereon, created by him, or against him.

Had Shipherd sought competent legal counsel as to whether Field's trust deed was the first lien, and disclosed the facts which Montgomery testifies that he communicated to him, he would have been advised that it was but a second lien, and the loss to Field would not have happened, as the testimony shows that neither Field nor Kelly would knowingly have accepted a second mortgage security.

Another point made is, that the land taken in security was at least double in value all the incumbrances on it, and that Kelly could have safely paid off the Rogers first incum-

brance, so as to have protected the Field mortgage. The evidence tends strongly to show that Kelly did not suppose but that the Field mortgage was the first lien upon the property, until he was informed to the contrary, when it was too late for him to attend the Rogers sale, and bid on the property. After the sale by Rogers, it was out of his power to redeem; but, though he may have been seasonably aware that the Rogers incumbrance was a first lien on the property, we do not see that it was his duty to raise the money necessary to pay off the Rogers incumbrance. It may have been out of his power to do so, the incumbrance being of the amount of about $6000. He may have been entirely unwilling, and it may have been detrimental to his interest to invest such an amount in the property. If any one ought to have done that, it would seem more properly to have devolved upon Shipherd, who had full opportunity to do so, and through whose negligence, or breach of promise, the necessity for doing it had arisen.

But it is not pretended that Field himself knew of the existence of any prior lien upon the property, until after the title was irredeemably gone by the Rogers sale, and we can not perceive why this objection should defeat his action.

On full consideration of the testimony, we can not say that the finding of the jury is so manifestly against the weight of the evidence as to require that it should be disturbed by a reversal of the judgment.

Objection is taken to the giving of the first instruction for the plaintiff, and to the refusal of the fourth and fifth instructions asked by the defendant.

It is insisted, that the first instruction lays down an erroneous rule as to the measure of damages, it being, the amount of the money loaned. In order to recover that, it is said that Field should have repudiated the loan without delay, and have tendered the securities to Shipherd, and demanded his money; whereas, he delayed making such tender for a year or more, after the facts were known to him.

It seems a sufficient answer to say that there was evidence tending to show a waiver by Shipherd of any earlier tender of the securities by his conduct in requesting Field to wait, and holding out the encouragement that he (Shipherd) could collect the money from Montgomery.

We think the instructions refused would, in the form asked, have tended to mislead the jury, and that, in so far as they contain correct principles of law applicable to the case, they were given in other instructions for the defendant, which embraced the law applicable to the defendant's case, in a more favorable form even than the defendant was entitled to have it given.

We see no just ground of complaint for the court's ruling on instructions.

It is, lastly, urged, that there was error in overruling defendant's motion in arrest of judgment.

The declaration does contain this allegation, that "the plaintiff, relying upon the said representations, promises, assurances and guaranty *of said Kelly*, so acting as agent as aforesaid, which were by said Kelly duly communicated to the plaintiff, advanced and placed in the hands of said defendant, to be loaned by said defendant for said plaintiff as aforesaid, the sum of $3000," etc.; and it is said the allegation in the declaration is, that Field, the plaintiff, relied upon Kelly, and not upon Shipherd.

A perusal of the preceding portion of the declaration makes it manifest that there is a palpable clerical mistake in the use of the words, "*of* said Kelly," instead of the words, "*to* said Kelly." *Said* declarations, etc., in the portion above quoted, refer to the declarations, etc., which had before been mentioned, and they are there, in the preceding part of the declaration, each one of them, laid as having been made by Shipherd, and not one as made by Kelly.

The words, "*of* said Kelly," are contradictory and repugnant to the precedent matter. The entire words, "of said Kelly so acting as agent as aforesaid," are surplusage, which

should not vitiate. "Where matter is nonsense, by being contradictory and repugnant to something precedent, then the precedent matter which is sense shall not be defeated by the repugnancy which follows, but that which is contradictory shall be rejected." 1 Salk. 324. Especially so, it may be said, after verdict.

The motion in arrest of judgment was properly overruled.

Perceiving no error in the record, the judgment must be affirmed.

*Judgment affirmed.*